# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**MARK ANTHONY BURGESS,**                                                **PLAINTIFF**
**MDOC # 77647**

**v.**                                                **CIVIL NO. 3:17-cv-63-TSL-JCG**

**MR. O. LITTLE et al.**                                                **DEFENDANTS**

## <u>REPORT AND RECOMMENDATION</u>

BEFORE THE COURT is a Motion for Summary Judgment (ECF No. 42),
filed by Defendants Management & Training Corporation (MTC) and MTC
correctional staff at East Mississippi Correctional Facility (EMCF), in Meridian,
Mississippi, namely Warden Frank Shaw, Deputy Warden Norris Hogans, Unit
Manager Simone Jones, Lieutenant William Brown, and Lieutenant LeShauntae
Hughes Moore. *Pro se* Plaintiff Mark Anthony Burgess is a postconviction prisoner
in the custody of the Mississippi Department of Corrections serving a term of
imprisonment at EMCF. Plaintiff has not responded to Defendants' Motion for
Summary Judgment. Having considered the submissions, the record, and applicable
law, the undersigned recommends that Defendants' Motion for Summary Judgment
be GRANTED and Plaintiff's remaining claims dismissed with prejudice.

## BACKGROUND

Plaintiff is serving a life sentence as a habitual offender and is currently
housed at EMCF. Plaintiff initiated this suit on January 3, 2017, in the Circuit
Court of Lauderdale County, Mississippi. The Circuit Court granted Plaintiff's
petition to proceed *in forma pauperis*. Warden Shaw, Deputy Warden Hogans, and

Unit Manager Jones removed the action to this Court based upon federal question jurisdiction.

A *Spears* hearing was held on June 1, 2017. *See Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985). After the *Spears* hearing, the undersigned issued a Report and Recommendation, recommending that Plaintiff's medical care and certain grievance-process-related claims be dismissed because Plaintiff previously litigated those claims in *Burgess v. Reddix,* Civil Action No. 3:13-cv-1006-CWR-FKB (S.D. Miss. 2013).[1] The undersigned recommended that Plaintiff's medical-care-related claims be dismissed for the additional reason that those claims were not based on allegations that Plaintiff was being denied medical treatment, but instead, on allegations that Plaintiff disagreed with the treatment he was being provided. (ECF No. 34, at 5-8). The undersigned found that Plaintiff's legal-mail-related claim was subject to dismissal on grounds that Plaintiff could not show that he was prejudiced because of the one-time occurrence of a court not receiving paperwork he had allegedly sent from prison. *Id.* at 8-9.

Plaintiff did not file objections to the Report and Recommendation. District Judge William H. Barbour, Jr. adopted the undersigned's Report and Recommendation, agreeing that Plaintiff's medical-related-claims, grievance-

---

[1] In *Reddix,* United States District Court Judge Carlton W. Reeves adopted the Report and Recommendation of United States Magistrate Judge F. Keith Ball, who found that Plaintiff was provided medical treatment, "just not as often or exactly the type he wanted." Civil Action No. 3:13-cv-1006-CWR-FKB, 2014 WL 1050753, *4 (S.D. Miss. Mar. 14, 2014). Plaintiff's claims regarding EMCF's grievance procedure were dismissed because they implicated no constitutional right. *Id.* at 7. Plaintiff appealed *Reddix* to the Fifth Circuit Court of Appeals, and the Fifth Circuit affirmed. *See Burgess v. Reddix,* No. 14-60234, 609 F. App'x 211, 212 (5th Cir. 2015). Plaintiff filed this suit a year and a half after the Fifth Circuit affirmed in *Reddix.*

process-related claims, and legal-mail-related claims should be dismissed for the reasons stated.

Plaintiff's remaining claims are against Warden Shaw, Deputy Warden Hogans, Unit Manager Jones, Lieutenant Brown, and Lieutenant Moore. Plaintiff's claims concern numerous rule violation convictions and resulting discipline that Plaintiff received from late 2012 through March 2017, which Plaintiff maintains was the result of retaliation because he filed *Reddix*. The Rule Violation Report (RVR) convictions resulted in Plaintiff losing privileges and eventually being placed in closed custody housing. Plaintiff alleges that Unit Manager Jones issued or resolved numerous RVRs against Plaintiff because Plaintiff filed *Reddix*. Plaintiff alleges that, in retaliation for filing *Reddix,* he was subjected to excessive force by Lieutenant Brown and placed in segregation twice without due process by Lieutenant Moore. Plaintiff alleges that Warden Shaw and Deputy Warden Hogans, in retaliation for Plaintiff filing *Reddix,* conspired in failing to adequately address administrative grievances Plaintiff submitted through EMCF's administrative remedy program (ARP).

Plaintiff characterizes himself as "a mental health offender with bipolar symptoms," whose "many RVRs" for "disruptive behavior or disorderly conduct" are due to Plaintiff's "bipolar symptoms." (ECF No. 6, at 10). Plaintiff states that when he is "'harassed' or 'intimidated' by staff he undergoes bipolar symptoms angry behavior lashing out at staff members, who harass him by way of intimidation." *Id*. at 10 [all sic in original].

Defendants' Motion for Summary Judgment was filed on April 9, 2018. Nine and a half months have passed since that time, and Plaintiff has not filed a response to the Motion for Summary Judgment. It is certain that Plaintiff is aware of the Motion for Summary Judgment, as it was served upon him by Defendants (ECF No. 42, at 4) and furthermore Plaintiff requested and received a copy of the docket sheet in September 2018. (ECF No. 44).

The Rule Violation Reports (RVRs) referenced in or attached to Plaintiff's pleadings, including their date, charge, and resolution follow:

| 11/29/2012 | RVR No. 16154 (ECF No. 6, at 185) | Disruptive behavior in violation of Rule B16. Disobeyed orders to stop talking loudly in medical and began threatening medical staff. | 30 days loss of visitation privileges |
| 10/24/2013 | RVR No. 01394177 (ECF No. 42-3, at 1) | Refusing to obey an order of staff in violation of Rule B3 | 30 days loss of phone privileges |
| 10/24/2013 | RVR No. 01394176 (ECF No. 42-3, at 1) | Interfering with an employee in the performance of her duty in violation of Rule B2 | 30 days loss of phone privileges |
| 2/22/2015 | RVR No. 01579133 (ECF No. 44-5) | Destroying or defacing state property in violation of Rule B23 | Loss of privileged housing, job, or meritorious living conditions |
| 4/10/2015 | RVR No. 01597033 (ECF No. 44-6) | Abusive, disrespectful and threatening language in violation of Rule B13 | 60 days loss of all privileges |
| 7/8/2015 | RVR No. 01641195 (ECF No. 42-7) | Disruptive behavior in violation of Rule B16 | 60 days loss of all privileges |
| 7/11/2016 | RVR No. 01708743 (ECF No. 42-8) | Disruptive behavior in violation of Rule B16 for throwing a chair at the | Segregation for 10 days (time served) |

| | | window and Nurse Brookshire three times. | |
|---|---|---|---|
| 7/11/2016 | RVR No. 01702445 (ECF No. 42-9) | Possession of major contraband in violation of Rule C7. Plaintiff in possession of two bottles of prescription pills. | 60 days loss of all privileges and custody review |
| 11/25/2016 | RVR No. 01723246 (ECF No. 42-10) | Disruptive behavior or disorderly conduct which threatens the orderly running of the facility | Found not guilty |
| 11/27/2016 | RVR No. 01723233 (ECF No. 42-11) | Refusing to obey an order of staff in violation of Rule B3 by leaving medical department and refusing to be escorted back to housing unit. | 30 days loss of all privileges |
| 3/14/2017 | RVR No. 01798425 (ECF No. 42-12) | Being in a restricted or unauthorized area in violation of B11 | Plaintiff placed in a holding cell in the medical department and medically evaluated. (ECF No. 43, at 15; ECF No. 43-2). Then moved to segregation until 4/11/2017. (ECF No. 43, at 16, ECF No. 43-13). |
| 3/14/2017 | RVR No. 01797573 (ECF No. 42-13) | Disruptive behavior in violation of Rule B16 after refusing to return to assigned housing pod, yelling at staff, running toward, threatening and throwing his cane at Captain Rowell and throwing books toward Sergeant Stewart. (ECF No. 42-13, at 2). | Plaintiff was given a warning because during the incident, Plaintiff was sprayed with chemical agent by Sergeant Stewart. (ECF No. 42-13, at 2) |

DISCUSSION

A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *see also Moore v. Miss. Valley State Univ.,* 871 F.2d 545, 549 (5th Cir. 1989); *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323-24. The non-moving party must then go

beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence." *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will be able to prevail at trial. *Nat'l Screen Serv. Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir. 1962).

B.  Plaintiff Has Not Shown Retaliation

Prisoners have a constitutional right of access to the courts. *Bounds v. Smith,* 430 U.S. 817, 822 (1977). Plaintiff alleges that prison officials retaliated against him for filing *Reddix.* "To state a valid claim for retaliation under [S]ection 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Bibbs v. Early,* 541 F.3d 267, 270 (5th Cir. 2008).

> To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims. To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident – such as the filing of disciplinary reports as in the case at bar – would not have occurred. This places a significant on the inmate. Mere conclusory allegations of retaliation will not

> withstand a summary judgment challenge. The inmate
> must produce direct evidence of motivation or, in the more
> probable scenario, allege a chronology of events from which
> retaliation may plausibly be inferred. Although we decline
> to hold as a matter of law that a legitimate prison
> disciplinary report is an absolute bar to a retaliation claim,
> the existence of same, properly viewed, is probative and
> potent summary judgment evidence, as would be evidence
> of the number, nature, and disposition of prior retaliation
> complaints by the inmate.

*Woods v. Smith,* 60 F.3d 1161, 1164, 1166 (5th Cir. 1995) (internal quotation omitted).

"A prisoner who brings a retaliation claim bears a heavy burden that may not be satisfied with conclusional allegations or his own personal beliefs." *Williams v. Dretke,* 306 F. App'x 164, 167 (5th Cir. 2009). A chronology must include "more than simply an exercise of a constitutional right followed by an adverse consequence." *Campbell v. Hampton,* No. 4:15-cv-169-MPM-DAS, 2017 WL 3749801, *4 (N.D. Miss. Aug. 30, 2017).

   1. Retaliation Claims Against Unit Manager Jones

   Plaintiff filed *Reddix,* on November 6, 2012. Plaintiff claims that, after he filed *Reddix,* Unit Manager Jones issued or found him guilty of multiple rule violations in retaliation for Plaintiff having filed *Reddix*. (ECF No. 6, at 8-9). Plaintiff claims that Jones fabricated RVRs and forged the names of other correctional staff on RVRs in order to retaliate against Plaintiff for filing *Reddix*.

   Plaintiff alleges that on July 11, 2016, Unit Manager Jones issued Plaintiff a fabricated RVR for possession of major contraband, namely RVR No. 01702445 (ECF No. 42-9). According to the RVR, two bottles of prescription pills were

discovered during a search of Plaintiff's personal property on Housing Unit 4-D, Cell 115. A photo of both pill bottles was attached to the RVR. *Id.* at 2. Under MDOC policy, major contraband includes prescription and non-prescription medication. (ECF No. 42-4, at 4). At a disciplinary hearing on August 2, 2016, Lieutenant Moore found Plaintiff guilty based on investigation results and Plaintiff's admissions at the hearing. (ECF No. 42-9, at 1). As punishment, Lieutenant Moore gave Plaintiff sixty days loss of all privileges and custody review. *Id.*

Plaintiff filed an appeal of the RVR, which was denied by Deputy Warden Hogans and then Warden Shaw. (ECF No. 42-14, at 11). In response to a grievance by Plaintiff, Warden Shaw stated that although the medication had been prescribed to Plaintiff, inmates are to take their medication during pill call and are not allowed to accumulate medication in their cell. (ECF No. 42-15, at 9).

Plaintiff has failed to present any evidence that Unit Manager Jones fabricated the allegations contained in RVR No. 01702445 or that she issued the RVR in retaliation for Plaintiff having previously filed a lawsuit. Jones was not named in Plaintiff's previous lawsuit. *See Burgess v. Reddix,* 3:13-cv-1006-CWR-FKB (S.D. Miss.). There is no evidence in the record that Jones was aware that Plaintiff filed *Reddix*. A photo of the pill bottles exists in the record, and Plaintiff does not deny having the pills in his cell. Plaintiff's conclusional allegations and own personal beliefs with respect to RVR No. 01702445 are insufficient to withstand summary judgment.

Plaintiff references another RVR issued by Unit Manager Jones, RVR No. 01641195, which was issued on July 8, 2015. (ECF No. 6, at 180). Jones stated in the RVR that Plaintiff pointed his finger in her face and yelled and screamed at her while she was assisting on Housing Unit 4-A. (ECF No. 42-7, at 1). The RVR indicates that at a disciplinary hearing held two days later, Lieutenant Wren found Plaintiff guilty and punished him with sixty days loss of all privileges. Plaintiff has failed to present any evidence that Jones fabricated RVR No. 01641195 or issued it in retaliation for Plaintiff having previously filed a lawsuit. Plaintiff's conclusional allegations and own personal beliefs are insufficient to withstand summary judgment.

Plaintiff attached an RVR to his Complaint that was adjudicated by Unit Manager Jones, namely RVR No. 16154. (ECF No. 6, at 185). Plaintiff was issued the RVR on November 29, 2012, by Officer Carson. According to the RVR, Plaintiff refused orders to stop talking loudly in medical and began threatening medical staff. *Id.* The RVR indicates that at a disciplinary hearing held three days later, Jones found Plaintiff guilty based on Plaintiff's own admissions at the hearing. *Id.* Plaintiff was punished with loss of visitation privileges for thirty days. *Id.* Plaintiff's claim arising from this RVR is time-barred and should be dismissed with prejudice. *See James v. Sadler,* 909 F.2d 834, 836 (5th Cir. 1990) (holding Mississippi's three-year general personal injury limitations period applicable to § 1983 cases); *see* Miss. Code Ann. § 15-1-49. This claim against Unit Manager Jones should be dismissed for the additional reason that Plaintiff has failed to present any evidence that RVR

No. 16154 was fabricated or resolved against Plaintiff because he previously filed a lawsuit. Plaintiff's conclusional allegations and own personal beliefs with respect to RVR No. 16154 are insufficient to withstand summary judgment.

The remaining RVRs referenced by Plaintiff or attached to his Complaint do not indicate that Jones issued or adjudicated them. There is no evidence to support Plaintiff's accusation that Jones prepared the remaining RVRs and forged the signature of other correctional officers. The pleadings and admissions on file show that there is no genuine issue as to any material fact with respect to Plaintiff's retaliation claims against Unit Manager Jones, and Jones is entitled to judgment as a matter of law. *See Lee v. King,* Civil Action No. 1:13-cv-566-KS-MTP, 2015 WL 5554256, *9 (S.D. Miss. Sept. 21, 2015). Plaintiff has failed to meet his heavy burden of producing direct evidence of motivation for retaliation and failed to allege a chronology of events from which retaliation may be inferred. All retaliation claims against Jones should be dismissed with prejudice.

2. <u>Retaliation Claim Against Warden Shaw and Deputy Warden Hogans</u>

Plaintiff generally alleges that Warden Shaw and Deputy Warden Hogans – through their responses to Plaintiff's ARP grievances – conspired to retaliate against Plaintiff for filing *Reddix* by "fail[ing] to correct the harassment and retaliation that's inflicted on Plaintiff" by other prison personnel. (ECF No. 6, at 9-10; ECF No. 42-1, at 25:21-26:9). Neither Shaw nor Hogans was named as a defendant in *Reddix*. There is no evidence in the record that either Shaw or Hogans was aware of Plaintiff having filed *Reddix*.

Plaintiff alleges that on August 2, 2016, just two days after he filed an ARP grievance complaining about his assignment to segregation, Warden Shaw and Deputy Warden Hogans ordered Lieutenant Moore to find Plaintiff guilty of violating prison rules in an effort to reduce Plaintiff's custody classification at his next custody review. (ECF No. 14, at 9-10). At a disciplinary hearing before Lieutenant Moore, Plaintiff was found guilty on RVR No. 0178743 for disruptive behavior for throwing a chair at the window and a nurse three times. (ECF No. 42-8). At the same hearing, Plaintiff was found guilty on RVR No. 01702445 for possession of two bottles of prescription pills. (ECF No. 42-9).

Plaintiff has offered no evidence that Warden Shaw and Deputy Warden Hogans ordered Lieutenant Moore to find Plaintiff guilty of RVR No. 0178743 and RVR No. 01702445 in retaliation for exercising a constitutional right. (ECF No. 42-15, at 5). Plaintiff has failed to meet his heavy burden of producing direct evidence of motivation for retaliation and failed to allege a chronology of events from which retaliation may be inferred.

3. Retaliation Claims Against Lieutenant Moore

Plaintiff maintains that on November 29, 2016, Lieutenant Moore found him not guilty on RVR No. 01723246 and RVR No. 01723233 but nevertheless placed Plaintiff on a 30-day commissary restriction. (ECF No. 14, at 5). Plaintiff maintains that this constitutes "harassment and retaliation." *Id.*

The RVRs in question show that Plaintiff was found not guilty on RVR No. 01723246 but found guilty on RVR No. 01723233. (ECF No. 42-10, ECF No. 42-11).

RVR No. 01723233 charged Plaintiff with refusing to obey staff by leaving the medical department and refusing to be escorted back to his housing unit. (ECF No. 42-10). Plaintiff was punished for his conviction on RVR No. 01723233 with 30 days loss of privileges. (ECF No. 42-11). Plaintiff has failed to meet his heavy burden of producing direct evidence of motivation for retaliation and failed to allege a chronology of events from which retaliation may be inferred.

C.  Plaintiff Has Not Shown a Procedural Due Process Violation

Plaintiff maintains that being placed in segregation before being allowed a disciplinary hearing violated his right to procedural due process. The Due Process clause of the Fourteenth Amendment prohibits state officials from depriving "life, liberty, or property without due process of law." U.S. Const., Amend. XIV. Questions of procedural due process involve "two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . .; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460 (1989). Plaintiff has not been deprived life or property; therefore, his claims hinge on whether he has been deprived of a liberty interest without adequate procedural protections.

"[T]he Due Process clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner,* 515 U.S. 472, 478 (1995). "Admittedly, prisoners do not shed all constitutional rights at the prison gate, but lawful incarceration brings about the

necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* at 485 (internal quotations omitted). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.*

In *Sandin v. Conner,* an inmate placed in disciplinary segregation for thirty days asserted a violation of procedural due process. "*Sandin* itself involved disciplinary segregation, a severe form of prison discipline, yet held that such confinement, 'though concededly punitive, does not present a dramatic departure from the basic conditions of Conner's indeterminate sentence.'" *Orellana v. Kyle,* 65 F.3d 29, 32 (5th Cir. 1995) (quoting *Sandin,* 515 U.S. at 485). In *Sandin,* the United States Supreme Court recognized that prisoners have procedural protections under the Fourteenth Amendment for a narrow category of state-created liberty interests that

> will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* at 483-84.

"Few other incidents of prison life involve such a level of deprivation as disciplinary segregation. Thus, while, as *Sandin* noted, prisoners retain constitutional remedies under the First and Eighth Amendments the Equal Protection Clause of the Fourteenth Amendment, the ambit of their potential Fourteenth Amendment due process liberty claims has been dramatically

narrowed." *Orellana,* 65 F.3d at 32.

In *Wilkinson v. Austin,* the Supreme Court reaffirmed *Sandin,* holding that a liberty interest under the Due Process Clause "may arise from the Constitution itself, by reason of guarantees implicit in the word liberty, . . . or it may arise from an expectation or interest created by state laws or policies." 545 U.S. 209, 221 (2005). *Wilkinson* concerned a prisoner's assignment to the Ohio Supermax facility, with "highly restrictive conditions" of confinement that the Supreme Court found gave rise to a liberty interest. 545 U.S. 209, 213 (2005). "In the Ohio Supermax, inmates spent 23 hours a day in single cells, with solid metal doors that prevented communication from one cell to another; prisoners took their meals alone in their cells; and visitation opportunities were 'rare,' and conducted through glass walls." *Goodwin,* 774 F.3d at 854 (quoting *Wilkinson,* 545 U.S. at 224). The Supreme Court explained that "[w]hile any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." *Wilkinson,* 545 U.S. at 224.

Plaintiff was disciplined with segregation on two occasions, once in July 2016 and again in March 2017. (ECF No. 42-1, at 26:21-27:9, 47:12-18). Plaintiff was placed in segregation for two weeks in July 2016 after he received an RVR, charging him with taking a chair and throwing it at the window three times at Nurse Brookshire and almost hitting an offender. (ECF No. 42-1, at 27:16-24, ECF No. 42-8). On the same day, Plaintiff was issued another RVR for possession of major contraband consisting of two bottles of prescription medication. (ECF No. 42-1, at

30:6-31; ECF No. 42-9). Lieutenant Moore found Plaintiff guilty of both RVRs at a hearing on August 2, 2016, based on her review of camera footage and Plaintiff's admissions.

Plaintiff was disciplined with segregation again on March 28, 2017, following two RVRs he received on March 14, 2017. (ECF No. 42-1, at 28:6-12, 29:4-30:5; ECF No. 42-12, ECF No. 42-13). A disciplinary hearing on the RVRs was held on April 4, 2017, where Lieutenant Moore found Plaintiff guilty. The first RVR charged Plaintiff with being in a restricted area. (ECF No. 42-12). The second RVR, issued the same day, charged Plaintiff with refusing to return to his housing pod, yelling at staff, running towards Captain Rowell with a cane and threatening to hit him with it, and throwing property. (ECF No. 42-13). Plaintiff was placed in a holding cell in the medical department from March 15, 2017, until March 28, 2017. (ECF No. 42-2). Plaintiff was moved to a segregation cell on March 28, 2017, and released to general population on April 11, 2017. *Id.*

Plaintiff has not shown that his stints in segregation implicate a liberty interest. Plaintiff has not demonstrated that the punishment he received was "'qualitatively different' from the punishment characteristically suffered by a person convicted of a crime." *Sandin,* 515 U.S. at 479 n.4, 485-86. Plaintiff has not demonstrated an atypical and significant hardship in relation to the ordinary incidents of prison life. His due process claims should be dismissed with prejudice as frivolous. *See Lewis v. Dretke,* No. 02-40956, 2002 WL 31845293, *1 (5th Cir. 2002) (restrictions on commissary, telephone, recreation, and library privileges as well as attendance at

religious services, along with 15 days of solitary confinement, resulting from allegedly false disciplinary charges did not implicate due process); *Malchi v. Thaler,* 211 F.3d 953, 958 (5th Cir. 2000) ("thirty-day loss of commissary privileges and cell restrictions do not implicate due process concerns"); *Sharp v. Anderson,* 220 F.3d 587 (5th Cir. 2000) (112 days administrative segregation did not implicate protection of due process clause); *Berry v. Brady,* 192 F.3d 504, 508 (5th Cir. 1999) (loss of visitation session insufficient to implicate liberty interest); *Madison v. Parker,* 104 F.3d 765, 767 (5th Cir. 1997) (inmate's 30 day commissary and cell phone restrictions as punishment did not implicate due process concerns); *King v. Sims,* 2009 WL 2497154, *5 (S.D. Miss. Aug. 14, 2009) (reclassification, reassignment, and loss of commissary, phone, and visitation privileges did not constitute constitutional violation).

D. <u>Plaintiff Has Not Shown An Eighth Amendment Violation</u>

The Eighth Amendment, which forbids "cruel and unusual punishments," governs the treatment of convicted prisoners. U.S. Const., Amend. VIII; *see e.g., Kingsley v. Hendrickson,* 135 S. Ct. 2466, 2475 (2015). To prevail in an Eighth Amendment case, a prisoner must establish an "objective component," the seriousness of the challenged conditions, and a "subjective component," the state of mind of the officials who are responsible for them. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). Prison conditions that are "restrictive and even harsh are the part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981).

Conditions do not violate the Eighth Amendment unless they amount to "the unnecessary and wanton infliction of pain.," *Helling v. McKinney,* 509 U.S. 25, 32 (1993) (citing *DeShaney v. Winnebago Cty. Dep't of Social Servs.,* 489 U.S. 189, 199-200 (1989)). A prison official can be found deliberately indifferent if "the official knows of and disregards an excessive risk to inmates health or safety . . . ." *Farmer,* 511 U.S. at 837.

1.  Plaintiff's Excessive Force Claim Against Lieutenant Brown

Plaintiff alleges that Lieutenant Brown is liable for officers' use of excessive force against Plaintiff on November 23, 2016. The core inquiry in an Eighth Amendment excessive use of force case is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 7 (1992). "That inquiry includes the following non-exclusive factors: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) efforts made to temper the severity of a forceful response." *Jackson v. Kelly,* 512 F. App'x 386, 388 (5th Cir. 2013) (citing *Baldwin v. Stalder,* 137 F.3d 836, 838 (5th Cir. 1998)).

Plaintiff's pleadings, supplemented by his testimony at the omnibus hearing, fully support a finding that the officers' use of force was not clearly excessive relative to the need to restore discipline so as to constitute a constitutional violation. *Baldwin,* 137 F.3d at 838-39; *Hudson,* 503 U.S. at 7. Plaintiff testified

under oath at the omnibus hearing that after he received insulin on the morning of November 23, 2016, he felt that Sergeant Ray singled him out and was "taking control more than what it needs to be." (ECF No. 42-1, at 33:5-7, 37:21-38:8). In response, Plaintiff sat down on the floor in the medical unit, refused to return to his housing unit, and asked to speak to Lieutenant Brown. *Id.* at 38:15-22. Plaintiff testified that he sat down because he "was fixing to have a bipolar episode" and wanted to protect himself and those around him. *Id.* at 39:21-40:5.

Lieutenant Brown arrived, and when Plaintiff tried to explain, Lieutenant Brown "neglected to hear [his] complaints." *Id.* at 40:17-23. Plaintiff testified that because he felt Lieutenant Brown was not listening to him, he went "into a bipolar episode," described by Plaintiff as outrage where Plaintiff loses control and will not listen to anyone. *Id.* at 42:13-16, 44:20-25. Plaintiff admits that this behavior "is really not a good thing to do because it gets you in a lot of trouble in prison." *Id.* at 44:22-25. Plaintiff admits he was "just lashing out loudly at people." *Id.* at 45:7-11.

Plaintiff testified that Lieutenant Brown ordered the officers who were present to roll Plaintiff over, handcuff him, and remove him from the medical clinic. *Id.* at 43:4-6, 45:12-14. Plaintiff testified that the officers tried to pick him up by his handcuffs, they were unable to do so, and dropped him to the floor. *Id.* at 46:10-15. Plaintiff testified that there was initially a "smaller guy under me" and that he "just wasn't able to get me up off the ground." *Id.* at 46:20-23. Plaintiff testified that a larger male officer then got under him, and they were able to pick Plaintiff up. *Id.* at 46:17-18. Plaintiff was walked from the medical department to his housing unit.

*Id.* at 46:6-9. Plaintiff claims he sustained wounds to his wrists and injured his

right knee. (ECF No. 14, at 6-7).

Plaintiff admits he was lashing out, sat on the floor, and would not leave the

medical unit voluntarily. There is no evidence that force was applied for any other

reason but to restore discipline. Plaintiff has offered no proof that force was

executed maliciously and sadistically to cause harm. Lieutenant Brown was not one

of the officers who handcuffed Plaintiff or lifted him off the floor. There is no

evidence that Brown instructed any of the officers to drop Plaintiff or to act in a

manner intended to harm Plaintiff. There is no evidence that Lieutenant Brown

knew of a "substantial risk of serious harm" to Plaintiff or that she disregarded the

risk by "failing to take reasonable measures to abate it." *Farmer,* 511 U.S. at 847.

Even if Plaintiff could demonstrate that he suffered more than a *de minimus* injury,

he has failed to show a constitutional violation.

2.  Lockdown Claims Against Warden Shaw and Deputy Warden Hogans

Plaintiff alleges that Warden Shaw and Deputy Warden Hogans locked down his

housing unit on several occasions due to incidents occurring elsewhere in the

facility, which Plaintiff urges constitutes cruel and unusual punishment. (ECF No.

14, at 9). Plaintiff's claim fails because he has not shown "unquestioned and serious

deprivations of basic human needs" or of the "minimal civilized measure of life's

necessities." *Rhodes,* 452 U.S. at 347; *accord Wilson,* 501 U.S. at 308. Plaintiff has

identified no basic needs that were withheld him during lockdown. Plaintiff's claim

also fails because Plaintiff has not offered evidence that officials knew about and

disregarded an excessive risk to Plaintiff's health or safety. There is no evidence that Shaw or Hogans instituted lockdown because of bad faith or based on pretext; there is no proof of malicious or sadistic acts.

## RECOMMENDATION

Based upon the information in Plaintiff's pleadings, supplemented by his testimony at the omnibus hearing, Plaintiff has no legitimate cause of action, and the Motion for Summary Judgment, filed by MTC, Warden Shaw, Deputy Warden Hogans, Unit Manager Jones, Lieutenant Brown, and Lieutenant Moore should be GRANTED and Plaintiff's claims dismissed with prejudice.

## NOTICE OF RIGHT TO APPEAL/OBJECT

In accordance with Local Uniform Civil Rule 72(a)(3) and 28 U.S.C. §636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the proposed findings and recommendations. The District Judge at that time may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge may also receive further evidence or recommit the matter to the Magistrate Judge with instructions.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this Report and Recommendation within fourteen days after being served with a copy shall bar that party, except under grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to

which the party has not objected. *Douglass v. United Servs. Auto. Ass'n.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996), *superseded by statute on other grounds,* 28 U.S.C. §636(b)(1). An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections.

      **SIGNED,** this the 30th day of January, 2019.

                    *s/ John C. Gargiulo*
                    JOHN C. GARGIULO
                    UNITED STATES MAGISTRATE JUDGE